JACOB WEINER, Respondent, Appellant, *v.* LOLA WEINER, Appellant, Respondent.

First Department, July 3, 1942.

*Jay Leo Rothschild* of counsel [*Walter S. Beck* with him on the brief], for the respondent-appellant.

*Abraham J. Halprin* of counsel [*Bernard Rothman* with him on the brief], for the appellant-respondent.

GLENNON, J. Plaintiff and defendant were married in the city of Newark, N. J., on February 14, 1931. At that time plaintiff was about thirty-three years of age, while his wife was thirty-six

or thirty-seven. On or about June 21, 1941, plaintiff left his home and since then has lived separate and apart from defendant. There has been no issue of the marriage. Both parties had previous matrimonial experiences, plaintiff having been married twice and the defendant once. Plaintiff has a daughter who is a child of his first marriage.

Almost from the outset the marriage was not a happy one. The record discloses that the defendant was possessed of an exceedingly jealous disposition; indulged very frequently in the use of vile epithets toward her husband, not only in private but also in public. She assaulted him with knives on at least two occasions and bit him, drawing blood. She freely admitted the expenditure of large sums of her husband's money, her wearing apparel alone costing him " about $100 a week." She had " charge accounts all over." According to her testimony, during the last four years the parties were together they lived approximately at the rate of $35,000 or $40,000 a year. Apparently the earnings of the plaintiff did not justify any such expenditure. However, the record indicates that plaintiff's uppermost thought was to keep peace in the family.

In 1938, at the insistence of the defendant, plaintiff purchased a house at Great Neck, Long Island, although, for business reasons, he did not wish to do so. Later, after a previous litigation was instituted by the defendant against plaintiff for a separation, the controversy at that time was settled in part by the conveyance by plaintiff to the defendant of the house at Great Neck. Subsequently, much to the embarrassment of the plaintiff, defendant caused a sign which read, " My 1939 Lemon for Sale," to be placed on the house. While defendant contended, apparently without any foundation in fact, that plaintiff had suggested the wording of the sign, it was removed only after the builder of the house had threatened to sue her.

During the summer of 1939 defendant told the plaintiff that she desired to go to Maine for a vacation of a couple of weeks. She obtained from him the funds to cover the expenses of the trip. Two or three days later she visited plaintiff at his office and told him, in effect, that she had been away but due to illness she had to return. On cross-examination she admitted that she had not gone away but had remained in the city. The purpose of deceiving plaintiff, as outlined by the defendant, was to have a maid who was employed in the household " spy " on him while she pretended to be in Maine.

A disinterested witness testified as to an incident which had occurred on the Labor Day week-end of 1940 at Grossinger's Hotel,

Ferndale, in the Catskills, New York. The scene was laid in the tap room on Sunday afternoon about one o'clock. The witness and his brother had played a game of golf. As he stated, they walked into the tap room to have a cool drink. There they met the plaintiff and shortly thereafter "my brother's girl walked in and was introduced to Jack [plaintiff] by my brother Ben." This witness testified: "We didn't notice anything until Mrs. Weiner walked in and walked right up to the table. My attention was attracted when I heard her say to this girl, ' Get up from there, you lousy tramp; get away from my husband,' and the girl naturally was confused; she is a refined girl. She stood up, and Mrs. Weiner slapped her. By that time, they broke the thing up. It was causing quite a bit of excitement at the time. The girl cried bitterly. She stayed in her room practically the rest of the day crying about it. Q. What did Mrs. Weiner do in respect to this girl? You say she slapped her? A. She slapped her; yes. Q. Anything else? A. She kicked her. I mean, it wound up like a real fight, like a real brawl."

Defendant's purchases in the different stores in which she had charge accounts increased to such an extent that it became necessary for plaintiff to close the charge accounts. He sent out notices to that effect to the stores on May 6, 1941. After he did so, the defendant said that she would no longer cohabit with plaintiff. She threatened that in the event he would not reopen the accounts, she would send him to jail for ten years, and that, in effect, she would notify the income tax bureau "to search through my [plaintiff's] books." Even though the charge accounts were stopped, defendant continued to make purchases. On May 16, 1941, she purchased a coat for $575 from J. Weinig & Sons. Later, after a refusal by plaintiff to pay for it, a suit was instituted by the sellers against the plaintiff and the defendant. A verdict was rendered by a jury in favor of Jacob Weiner, plaintiff herein, and against the defendant, Lola Weiner. Other actions were also instituted.

More incidents, too numerous to mention, could be recounted. We think sufficient has been shown, however, to indicate that this plaintiff was justified in refusing to continue to live with and support the defendant. We have determined, therefore, that the court at Special Term should have entered a judgment of separation in favor of the plaintiff for the following causes, as outlined in section 1161 of the Civil Practice Act: (1) The cruel and inhuman treatment of plaintiff by the defendant. (2) Such conduct on the part of the defendant towards the plaintiff as may render it unsafe and improper for the latter to cohabit with the former.

We are in accord with the findings of the trial court to the effect that the counterclaim interposed by the defendant should have been dismissed on the merits.

The judgment, in so far as it dismisses the complaint, should be reversed and judgment entered in favor of the plaintiff for the relief prayed for in the complaint. In so far as the judgment dismisses the counterclaim, it should be affirmed.

MARTIN, P. J., TOWNLEY, COHN and CALLAHAN, JJ., concur.

Judgment, in so far as it dismisses the complaint, unanimously reversed and judgment directed to be entered in favor of the plaintiff for the relief prayed for in the complaint. Judgment, in so far as it dismisses the counterclaim, unanimously affirmed. Settle order on notice, reversing findings inconsistent with this determination and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.